UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **THE ESTATE OF MICHAEL SCHWARTZ,** and **BRENDA FISCHER** | ) ) ) |
| Plaintiffs, | ) ) Cause No.: |
| vs. | ) ) |
| **ASSISTED RECOVERY CENTERS OF AMERICA, LLC** | ) ) ) |
| SERVE:   Registered Agent: Percy Menzies 6651 Chippewa, Suite 224 St. Louis, MO  63109 | ) ) **PLAINTIFFS DEMAND TRIAL** ) **BY JURY** ) ) ) ) |
| and | ) ) |
| **PERCY MENZIES** SERVE AT:   6651 Chippewa, Suite 224 St. Louis, MO  63109 | ) ) ) ) |
| and | ) ) |
| **JUDEALYNE MENZIES** SERVE AT:   6651 Chippewa, Suite 224 St. Louis, MO  63109 | ) ) ) ) |
| and | ) ) |
| **SUNEAL MENZIES** SERVE AT:   6651 Chippewa, Suite 224 St. Louis, MO  63109 | ) ) ) ) |
| and | ) ) |
| **TIM DALAVIRAS, PH.D** SERVE AT:   6651 Chippewa, Suite 224 St. Louis, MO  63109 | ) ) ) ) |
| and | ) ) |
| **ANDREA SHAW** SERVE AT:   6651 Chippewa, Suite 224 St. Louis, MO  63109 | ) ) ) ) |
| and | ) ) |

**PAUL N. SELVADURAI, MD**                    )
SERVE AT:   6651 Chippewa, Suite 224        )
            St. Louis, MO  63109            )
and                                          )
                                             )
**KATHERINE KRUSE**                          )
SERVE AT:   6651 Chippewa, Suite 224        )
            St. Louis, MO  63109            )
and                                          )
                                             )
**SHERYL CASTRO**                            )
SERVE AT:   6651 Chippewa, Suite 224        )
            St. Louis, MO  63109            )
                                             )
            Defendants.                      )

## COMPLAINT

### JURISDICTION AND VENUE

      1.      Counts I and II of this action arises under the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. §§ 1983 and 1988.  This Court has jurisdiction over Counts I and II pursuant to 28 U.S.C. § 1331.  Count III is a wrongful death claim arising under Missouri statutory law, RSMo. § 537.080.

      2.      Venue is proper before this Court as the unlawful acts committed occurred in St. Louis City and St. Louis County, State of Missouri.  28 U.S.C. Section 1391.

### PARTIES

#### *PLAINTIFFS*

      3.      Plaintiffs are the Estate of Michael Schwartz and Brenda Fischer.  Brenda Fischer is the appointed personal representative of the Estate of Michael Schwartz, and the biological mother of Michael Schwartz.  The Estate is filed in Jefferson County, Missouri, Case No.:  15JE-PR00407.  Plaintiff Brenda Fischer is a resident of Jefferson County, Missouri.

4.      Decedent Michael Schwartz died March 27, 2015, in Jefferson County, Missouri. Plaintiff Brenda Fischer brings this action pursuant to RSMo. § 537.080(1), as the biological mother of decedent and as a member of the class of individuals who are authorized to file a wrongful death claim.  Decedent Michael Schwartz was unmarried and without children.

5.      Under Section 537.080(1), Michael Schwartz is survived by the following individuals who are also authorized to bring a wrongful death claim:  Vernon Michael Schwartz (father); Carrie Nicole Morris (sister); Holly Michelle Brenner (sister); Danielle Christine Klos (sister); and Julie Ann Schwartz (sister).  There are no other members of the class who are entitled to file a wrongful death action to recover for the death of decedent Michael Schwartz.

6.      In accordance with RSMo. § 537.095, Plaintiff Brenda Fischer has notified all the other class members of this lawsuit.

## *DEFENDANTS*

7.      Defendant Assisted Recovery Centers of America, LLC ("ARCA") is a duly registered Missouri corporation.  ARCA operates multiple addiction treatment centers throughout the St. Louis and surrounding regions.

8.      Defendant Percy Menzies is the president and founding member of ARCA.  He has a master's degree in pharmacy, and represents himself to be an expert in the area of addiction treatment.

9.      Defendant Judealyne Menzies is the wife of Percy Menzies, and maintains the position of nursing director for ARCA.  She possesses a degree in nursing, operates the ARCA facilities, and is responsible for the daily supervision of the facilities.

10.     Defendant Suneal Menzies is the son of Percy and Judealyne Menzies, and maintains the position of program director of the ARCA facilities.  He is responsible for the daily

3

supervision of the ARCA facilities, and serves as the corporate liaison officer of ARCA to the Missouri Department of Mental Health whom ARCA provides contractual services with.

11.     Defendant Tim Dalaviras is the CEO of ARCA, and has a doctorate degree in the areas of behavioral health and addiction.  He is responsible for the daily supervision and operation of the ARCA facilities.

12.     Defendant Andrea Shaw maintains the position of clinical director for ARCA.  She has masters degrees in social work and business administration.  She is responsible for program development and clinical oversight of ARCA's outpatient services.

13.     Defendant Paul Selvadurai, MD, is a physician employed by ARCA to provide medical services and non-residential substance abuse treatment for the clients of ARCA.

14.     Defendant Katherine Kruse maintains the position of psycho-therapist for ARCA.  She has a master's degree in education, and is responsible for the ARCA outpatient psychotherapy services.

15.     Defendant Sheryl Castro was a registered medical assistant employed by ARCA.  She was responsible for maintaining client contact and treatment records of ARCA clients.  Her employment ended with ARCA after Michael's death on March 27, 2015.

## FACTS COMMON TO ALL COUNTS

### *ARCA AND ITS CONTRACTUAL OBLIGATIONS WITH THE MISSOURI DEPARTMENT OF MENTAL HEALTH AND MISSOURI DEPARTMENT OF CORRECTIONS*

### A. The Nature of Business of ARCA

16.     ARCA was created in calendar year 2001 by Defendants Percy and Judealyne Menzies.  At the time of ARCA's creation, Percy Menzies had a degree in pharmacology, and had previously worked as a sales representative for DuPont.  Judealyne Menzies was licensed as a registered nurse.

4

17.     While working with DuPont, the company had developed a drug known as Naltrexone, an anti-craving, daily administered drug for heroin and alcohol addiction. DuPont then invented a newer injectable form of Naltrexone known as Vivitrol, the advantage of which was a once-a-month only administration of the drug.

18.     ARCA was created by the Menzies to take advantage of Vivitrol, providing medically administered treatment of the shot, as well as, creating a business model of holistic treatment for the clients. In-patient services were eventually provided by a sister business known as "Menzies Institute for Recovery from Addiction," ("MIRA"). Out-patient services included Vivitrol shots, group therapy, individual therapy, and what is touted by ARCA as "Mom Power" – a family focused practice involving mothers into the treatment regimen of heroin addiction which was a demonstratively proven more successful practice.

19.     Both Percy and Judealyne Menzies publish that heroin addiction is a "progressive, chronic, relapsing disease", and that the victims of that disease are helpless to it without comprehensive intervention programs. Percy Menzies is a prolific writer on heroin addiction, advocating the programs of ARCA and MIRA as comprehensive and cutting-edge involvement of his staff and programs. In the absence of this comprehensive involvement/treatment, ARCA employees and staff are represented by Percy Menzies to know the fatal consequences. Mr. Menzies frequently appears on talk shows, is a paid consultant for the major drug manufacturer of Vivitrol (Alkermes), and publishes large amounts of self-promotion literature regarding ARCA's competent staff and programs. Mr. Menzies is currently a board member of the Missouri Advisory Counsel on Alcohol and Drug Abuse for the State of Missouri.

20.     At the time of creating ARCA and MIRA, neither Percy nor Judealyne Menzies had any experience in operating such clinics, or supervising such clinics. Percy Menzies had been employed as a salesman and Judealyne Menzies had been employed as a geriatric nurse.

21.     In calendar years 2014 and 2015, ARCA and MIRA operated four (4) facilities in the St. Louis region:

> Menzies Institute for Recovery from Addiction (MIRA)
> Metropolitan St. Louis Psychiatric Center Building
> 5351 Delmar Blvd., Floor 3-West
> St. Louis, MO  63112
>
> ARCA Outpatient Facility – South St. Louis
> Lansdowne Medical Building
> 6651 Chippewa, Suite 224
> St. Louis, MO  63109
>
> ARCA Outpatient Facility – Chesterfield, MO
> 1585 Woodlake Drive
> Town and Country, MO  63017
>
> ARCA Outpatient Facility – Farmington, MO
> 550 Maple Valley Drive
> Farmington, MO  63640.

## B.  Certification Requirements for ARCA and MIRA with the State of Missouri

22.     For ARCA and MIRA to provide its services, they are required to be certified by the State of Missouri, complying with:

> a.     9 CSR, Division 10, Chapter 5 (General Program Procedures);
> b.     9 CSR, Division 10, Chapter 7 (Core Rules for Psychiatric and Substance Abuse Programs);
> c.     9 CSR, Division 30, Chapter 3 (Certification Standards for Alcohol and Drug Abuse Programs); and
> d.     any subsequent revisions or additions to the above.

23.     ARCA and MIRA obtained certifications from an agency known as the "Joint Commission on Accreditation of Healthcare Organizations," ("JCAHO"), which allowed certification by the State of Missouri. (9 CSR 10-7.130).

24.     The certifications are mandatory, and compliance with the state regulations is mandatory to maintain the certifications.  Certifications are necessary to practice two (2) programs essential to ARCA and MIRA's business model known as "Comprehensive Substance Treatment and Rehabilitation Programs" ("CSTAR"), and "Medication Assisted Treatment" ("MAT").

25.     CSTAR and MAT programs are defined programs by the Missouri Department of Mental Health, Division of Alcohol and Drug Abuse, as follows:

"The Comprehensive Substance Treatment and Rehabilitation Program (CSTAR) is a comprehensive array of community-based treatment services tailored to the unique needs of individuals that meet Diagnostic and Statistical Manual of Mental Disorders (DSM) criteria for Substance Use Disorders (substance abuse or substance dependence).

CSTAR is a unique approach to substance abuse and addition treatment, offering a flexible combination of clinical services, living arrangements, and support services that are individually tailored for each consumer.  CSTAR focuses on providing a complete continuum of recovery services, including extended outpatient services in the community and, where possible, close to home.

Medication Assisted Treatment (MAT) – an evidence-based practice that combines pharmacological interventions with substance abuse counseling and social support.  Although not for everyone, it is an essential part of the comprehensive array of services available to people struggling with addiction to alcohol or other drugs.  The FDA-approved medications currently include naltrexone, buprenorphine (Suboxone), and methadone for opiate addiction.  Naltrexone, acamprostate (Campral), and disulfiram (Antabuse) are approved medications to help people whose primary drug of choice is alcohol.  The injectable form of naltrexone is called Vivitrol."

## C.  CSTAR and MAT Regulations Under Missouri C.S.R.'s

26.     The Missouri Code of State Regulations (C.S.R.'s) applicable to CSTAR and MAT programs provide, in relevant part, the following provisions:

(a)     "Essential Treatment Principles" (9 CSR 10-7.010) which requires management over the daily activities of the program; and, working with other sources ("family or courts") to promote an individual's participation in the program.

(b)     "Emergency Services" (9 CSR 10-7.030) which requires obtaining emergency contact information at the client's initial enrollment, and, that in the

7

event of a client presenting a likelihood of immediate harm to themselves, a response by staff members within fifteen (15) minutes of that notification – to the emergency contact/family member.  In addition, this regulation requires "Crisis Assistance and Intervention", twenty-four (24) hours per day, seven (7) days a week by qualified staff; "Missed Appointments" protocol, which requires contact with the client no more than forty-eight (48) hours afterward; and further, periodic review of treatment goals and outcomes (*i.e., looking at the client's file for failed program participation and discharge recommendation, fabricated documents, and unauthorized medical treatment or fabrication of it*).  Finally, this regulation expressly provides: "(D) The organization shall consistently implement criteria regarding discharge or successful completion; termination or removal from the program; and readmission following discharge or termination."

(c)  "Quality Improvement" (9 CSR 10-7.040) which requires each organization to develop and implement a written plan for a systemic assessment and process, which insures that the organization is providing services certified by the Department of Mental Health.

(d)  "Medications" (9 CSR 10-7.070) which requires:  "(A)  The organization shall assure that staff authorized by the organization and by law to conduct medical, nursing and pharmaceutical services do so using sound clinical practices and following all applicable state and federal laws and regulations."

(e)  "Personnel" (9 CSR 10-7.110) which requires:  "(2) Qualified and Trained Staff.  Qualified staff shall be available in sufficient numbers to ensure effective service delivery. (A)  The organization shall ensure that staff possess the training, experience and credentials to effectively perform their assigned services and duties.  (D)  There is clinical supervision of direct service staff that ensures adequate supervisory oversight and guidance, particularly for those staff who may lack credentials for independent practice in Missouri.  (3)  Ethical Standards of Behavior.  Staff shall adhere to ethical standards of behavior in their relationships with individuals being served. (A)  Staff shall maintain an objective, professional relationship with individuals being served at all times.  (B)  Staff shall not enter dual or conflicting relationships with individuals being served which might affect professional judgment or increase the risk of exploitation."

### D.  ARCA's Contracts with the State of Missouri
### (Department of Mental Health and Department of Corrections)

#### *The DOC and DMH Agreement*

27.  Between July 1, 2014 through June 30, 2015, the Missouri Department of Corrections and Department of Mental Health entered into a "Memorandum of Understanding" allowing for "Community-Based Behavioral Health Services".

28.    The Memorandum further provided, in relevant part, as follows:

"This memorandum of understanding (MOU) replaces the current agreement between the Department of Corrections (DOC) and the Department of Mental Health (DMH) for the provision of community-based behavioral health treatment and recovery services for offenders under the supervision of DOC.

II.    FISCAL YEAR 2015 AGREEMENTS AND RESPONSIBILITIES

A.    Community-based services for offenders with behavioral health disorders will be provided via signed contract renewals or amendments: http://dmh.mo.gov/docs/ada/Progs/Directory/TreatDirAdultSA,pdf.    Contract renewals and amendments will be issued by the Department of Mental Health to existing providers.

B.    Providers are required to restrict service delivery for DOC-referred consumers to their contracted Primary Recovery Pius (PR+), Comprehensive Substance Treatment and Rehabilitation (CSTAR) General Adult/Enhanced, or Community Mental Health Center (CMHC) service area(s).

C.    In the event the designated service provider does not adequately meet the needs of DOC offenders as determined through regular contact with referral sources, and all remedial measures are exhausted, then DMH will rebid services for the entire service area.

III.    DEPARTMENT OF CORRECTIONS RESPONSIBILITIES

A.    The Division of Offender Rehabilitative Services Area Substance Abuse Treatment Coordinators and designated staff of the District Probation and Parole offices will communicate regularly with DMH Area Treatment Coordinators, and other appropriate DOC and/or DMH staff in their respective regions, to ensure there is adequate access and appropriate delivery of behavioral health treatment and recovery services for offenders. The programs include:

b. CSTAR General Adult /Enhanced…

V.    JOINT RESPONSIBILITIES

B.    Ensure that appropriate signed releases exist to facilitate the timely sharing of information between DMH and DOC staff and treatment and recovery support providers."

### ARCA and the DMH Contract

29.     ARCA and the Department of Mental Health have routinely, since 2001, entered into contracts to provide CSTAR and MAT services to DOC (Probation and Parole) referred offenders.

30.     Section 2.7.1 provides, "The contractor shall employ staff consistent with the applicable requirements of the Certification Standards for Alcohol and Drug Abuse Programs."

31.     Section 2 – Medication Services of Attachment D of the contract provides:

"2.1     The contractor may provide Medication Services, as appropriate. This service consists of goal-oriented interaction to assess the appropriateness of medications to assist in a consumer's treatment, to prescribe appropriate medication, and to provide ongoing management of a medication regimen.

2.2     Services shall be provided by a physician or a qualified advanced practice nurse, licensed pursuant to RSMo. § 335.016."

32.     Defendant Sheryl Castro is not qualified to provide MAT services as described in Sections 2 through 2.2. She possesses only a certificate as a "Registered Medical Assistant" (RMA).

33.     Section 4.10 – Insurance of the contract provides:

"4.10.1 The contractor understands and agrees that the Department and the State of Missouri cannot save and hold harmless and/or indemnify the contractor or employees against any liability incurred or arising as a result of any activity of the contractor or any activity of the contractor's employees related to the contractor's performance under the contract. Therefore, the contractor shall acquire and maintain adequate liability insurance in the form(s) and amount(s) sufficient to protect the State of Missouri, its agencies, its clients, its employees and the general public against any loss, damage and/or expense related to his/her performance under the contract.

4.10.2 The contractor shall be responsible for all injury or damage as a result of the contractor's negligence, or any future negligent act, involving any equipment or service provided under the terms and conditions, requirements and specifications of the contract. In addition to the liability imposed upon the contractor on account of personal injury, bodily injury (Including death), or property damage suffered as a result of the contractor's negligence, the contractor assumes the obligation to save

10

the State of Missouri, including its agencies, employees, and assigns, from every expense, liability, or payment arising out of such negligent act. The contractor also agrees to hold the State of Missouri, including its agencies, employees, and assigns, harmless for any negligent act or omission committed by any subcontractor or other person employed by or under the supervision of the contractor under the terms of the contract.

4.10.4  If the contract involves the performance of medical services of any type, the contractor shall maintain adequate liability Insurance to cover all medical services rendered.

4.10.5  Proof of the insurance coverage shall include, but not be limited to, effective dates of coverage, limits of liability, insurers' names, policy numbers, company, etc. Proof of self-insurance coverage or another alternative risk financing mechanism maybe utilized provided that such coverage is verifiable and irrevocably reliable. Proof of insurance coverage shall be submitted to the Department as requested."

34.     ARCA did purchase and maintain a one million dollar ($1,000,000.00) per claim personal injury liability policy as required under the contract.

### Decedent Michael Schwartz's Contract with ARCA

35.     On July 21, 2014, Michael Schwartz entered into a contract with ARCA as a mandatory condition of his probation and parole.

36.     In part, the contract provided as follows, "I agree to attend and participate in all scheduled treatment activities as described in my treatment/services plan."  Further, the contract provided, "I understand that my failure to comply with any of the above conditions will be regarded by the staff as my request for immediate discharge."

### Contract Between Michael Schwartz, ARCA, the Department of Corrections and the Department of Mental Health

37.     As a condition of Michael Schwartz' probation, he was required to attend heroin addiction-community based services, and he did so through Probation and Parole's approved provider list in Hillsboro, Missouri.  ARCA was the contractor approved provider with the State of Missouri.

38.     For this condition of his probation, he, ARCA and his supervising probation officer, completed a mandatory form known as, "Missouri Department of Corrections and Department of Mental Health Community Treatment and Recovery Services Referral Form."

39.     The purpose of the contract is to eliminate the physician/patient privilege.  ARCA agrees under the contract to act as an agent and arm of the Department of Probation and Parole by providing prompt notice to them of any violations or conditions of the offender related to his treatment.[1]

40.     The contract is required to be signed by the "Supervising Officer" (Probation and Parole officer), "Client" (Michael Schwartz) and "Service Provider" (ARCA).

41.     Page 2 of this contract specifically defines "Responsibilities of Treatment and Recovery Professional", which in this instance was ARCA.  Section 4 under those responsibilities required the following:

"4.     Inform referring officer *within two business days* of:
- Missed appointments
- Positive tests for alcohol, illicit, or non-prescribed drugs
- Failure to comply with treatment or recovery plan
- Obstacles to treatment/recovery (transportation, money for medication, unsafe home environment, employment issues)."

42.     The very purpose of these contract provisions is to provide immediate notice to the Probation and Parole officer of any violations of the treatment program.  If these provisions are not followed by the treatment provider (ARCA) under the contract, the Probation and Parole officer will have no knowledge that the Court's probation conditions have been violated.

43.     The DMH defines the collaborative purpose and duties of ARCA in this contract as:

"2.     DOC/DMH Consumer Treatment and Recovery Services Guidelines Form (commonly referred to as the Guidelines Form) – communicates the responsibilities of the substance abuse treatment and recovery professional and servicing *FIELD*

---

[1] This contract, or one similar to it, is the industry standard.  It is used by ARCA's competitors such as Gateway, Bridgeway and Comtrea in the St. Louis region.

probation and parole officer. The form conveys to the consumer that his/her engagement in services is a *collaborative effort* between the supervising officer and treatment provider. The form is to be presented to the consumer's primary counselor on his/her first appointment, be signed by both parties, and a signed copy returned to the referring officer to signify engagement in services." (MISSOURI DEPARTMENT OF MENTAL HEALTH DIVISION OF ALCOHOL AND DRUG ABUSE, Clarification of Terms, Community-Based Substance Abuse Treatment and Recovery Services).

44.     This contract was executed by Michael Schwartz, ARCA, and his initial probation officer. Upon Michael's death, this contract was destroyed by Mr. Paul Koessel, his last probation officer in Hillsboro, Missouri.

### *HISTORY OF DECEDENT MICHAEL SCHWARTZ'S DRUG ADDICTION AND THE MISSOURI CRIMINAL JUSTICE SYSTEM*

#### *St. Louis County Cases*

#### Case Number: 08SL-CR03969-01

45.     On February 2, 2010, Decedent Michael Schwartz pled guilty to the charge of "Possession Of Controlled Substance - Heroin" (Felony C, RSMo. § 195.202) in St. Louis County under case number 08SL-CR03969-01. He was sentenced to three (3) years in the Missouri Department of Corrections, with a suspended execution of sentence, subject to five (5) years of supervised probation with the Missouri Board of Probation and Parole. On February 27, 2013, this probation was suspended for violating the terms of his probation (possession of heroin – case numbers 12SL-CR04651-01, and 12SL-CR09017-01, below), and he was ordered to complete a long term (4 month), institutional substance abuse treatment pursuant to RSMo. § 217.362. The substance abuse treatment in this case was ordered to be served concurrently with case numbers 09SL-CR02179-01, 12SL-CR04651-01, and 12SL-CR09017-01. After completing that substance abuse treatment program, his probation was revoked again, and he was sentenced again to long term (1 year) institutional substance abuse treatment on May 12, 2013, pursuant to RSMo. § 217.362.

## Case Number: 09SL-CR02179-01

46.     On February 2, 2010, Decedent Michael Schwartz also pled guilty to the charge of "DWI – Drug Intoxication – Persistent Offender" (Felony D, RSMo. § 577.010) in St. Louis County under case number 09SL-CR02179-01.  He was sentenced to three (3) years in the Missouri Department of Corrections, with a suspended execution of sentence, subject to five (5) years of supervised probation with the Missouri Board of Probation and Parole.  On February 27, 2013, this probation was suspended for violating the terms of his probation (possession of heroin – case numbers 12SL-CR04651-01, and 12SL-CR09017-01, below), and he was ordered to complete a long term (4 month), institutional substance abuse treatment pursuant to RSMo. § 217.362.  The substance abuse treatment in this case was ordered to be served concurrently with case numbers 08SL-CR03969-01, 12SL-CR04651-01, and 12SL-CR09017-01.  After completing that substance abuse treatment program, his probation was revoked again, and he was sentenced again to long term (1 year), institutional substance abuse treatment on May 12, 2014, pursuant to RSMo. § 217.362.

## Case Number: 12SL-CR04651-01

47.     On February 27, 2013, Decedent Michael Schwartz pled guilty to the charge of "Possession Of Controlled Substance - Heroin" (Felony C, RSMo. § 195.202) in St. Louis County under case number 12SL-CR04651-01.  He was sentenced to seven (7) years in the Missouri Department of Corrections, with a suspended execution of sentence, subject to five (5) years of supervised probation with the Missouri Board of Probation and Parole.  Further, he was ordered to complete long term (1 year), institutional treatment concurrent with case numbers 08SL-CR03969-01, 09SL-CR02179-01, and 12SL-CR09017-01.

### Case Number:  12SL-CR009017-01

48.     On February 27, 2013, Decedent Michael Schwartz pled guilty to a second charge of "Possession Of Controlled Substance – Heroin" (Felony C, RSMo. § 195.202) in St. Louis County under case number 12SL-CR09017-01.   He was sentenced to seven (7) years in the Missouri Department of Corrections, with a suspended execution of sentence, subject to five (5) years of supervised probation with the Missouri Board of Probation and Parole.   Further, he was ordered to complete long term (1 year), institutional substance abuse treatment concurrent with case numbers 08SL-CR03969-01, 09SL-CR02179-01, and 12SL-CR04651-01.

### *Lincoln County Case*

### Case Number:  07L6-CR01892-01

49.     On January 3, 2012, Decedent Michael Schwartz pled guilty to the charge of "Possession Of Controlled Substance – Heroin" (Felony C, RSMo. § 195.202) in Lincoln County under case number 07L6-CR01892-01.   He was sentenced to three (3) years probation with a suspended imposition of sentence, with a special condition of hair follicle testing every ninety (90) days.   On February 16, 2012, he violated the terms of his probation and a motion to revoke that probation was filed March 22, 2012.   On June 18, 2013, Michael Schwartz' probation was revoked. He was ordered to five (5) years in the Missouri Department of Corrections, with a suspended execution of sentence, subject to long term (1 year), institutional treatment.

### *St. Louis City Case*

### Case Number:  1322-CR01674-01

50.     On June 4, 2013, Decedent Michael Schwartz pled guilty to the charge of "Possession Of Controlled S ubstance – Heroin" in St. Louis City under case number 1322-CR01674-01.   He was sentenced to twelve (12) years in the Missouri Department of Corrections,

15

suspended execution of sentence, with two (2) years supervised probation. He was ordered to attend long term (1 year), institutional substance abuse treatment, and concurrent with each of the cases mentioned above.

## *COMPLETION OF THE ONE (1) YEAR SUBSTANCE ABUSE TREATMENT PROGRAM*

51.     Between June 24, 2013 and June 24, 2014, Decedent Michael Schwartz did complete the one (1) year institutional substance abuse treatment at the Ozark Correctional Facility in Fordland, Missouri. He was ordered to immediately report to the probation office in Hillsboro, Missouri for five (5) years of supervised probation.

52.     Each of the three (3) sentencing courts from St. Louis City, St. Louis County, and Lincoln County had granted a release to probation following the long term (1 year) substance abuse treatment. Each of those courts imposed additional probation requirements as conditions of his probation.

53.     Among the provisions of those courts as special conditions of probation were:  (a) to enter and successfully complete an out-patient substance abuse counseling program; (b) attend regular self-help twelve (12) step meetings; (c) submit to blood, breath, urine and hair follicle testing as requested; and, (d) attend after care programs for the duration of probation.

## *DECEDENT MICHAEL SCHWARTZ'S ENROLLMENT AT ARCA; MICHAEL'S DEATH AND THE EVIDENCE OF ARCA EMPLOYEE SHERYL CASTRO'S SEDUCTION/MANIPULATION OF MICHAEL AND HIS DISEASE*

54.     In obedience to the three (3) court orders which placed Michael on probation with the special conditions, he enrolled into CSTAR and MAT services at ARCA on July 21, 2014.[2]

---

[2] The ARCA patient file of Michael Schwartz indicates he was enrolled in a state sponsored/funded program known as "CHIP", meaning either Children's Health Insurance Program or Community/Hospital Incentive Program, which allowed treatment and funding for substance abuse victims like Michael under the recent Affordable Care Act of 2010. Michael was also listed in the program as "POP", meaning priority patient.

55.  The ARCA records represent that Michael was in contact with staff and employees of ARCA between July 21, 2014 and the date of his death, March 27, 2015.  Michael died of a heroin overdose at his mother's residence.

56.  Upon Michael's death, his cell phone was recovered and reviewed.  On his cell phone were numerous undeleted text messages between Michael and ARCA employee Sheryl Castro.  Phone records between both of their cell numbers demonstrate thousands of texts and phone calls between August 24, 2014 and March 27, 2015, but no text messages are retrievable prior to February 23, 2015.

57.  In the text messages, Sheryl Castro admits she fabricated letters to Michael's probation officer from ARCA; provided Michael heroin test kits so that Michael could test himself before seeing his probation officer so that he could move the probation date with the officer until he was "clean"; that she is taking speed and crystal meth, and making arrangements to give Michael crystal meth and Adderall – drugs which Michael otherwise had no reported or documented history of using.  Finally, the text messages demonstrate Sheryl Castro's sexual pursuit of Michael, a sexual encounter (intercourse) with Michael while her husband was in Texas, and how she was stuck in an unhappy, second marriage.

58.  In calendar years 2014 and 2015, Sheryl Castro was a middle-aged woman, and unhappily married.  Michael Schwartz was a thirty (30) year old, very attractive single man.

59.  Upon reviewing the text exchanges, Michael's ARCA patient file was obtained, demonstrating both Sheryl Castro's enablement of Michael with his addiction and the failures of ARCA to report mandatory violations of his probation and treatment under the contract between ARCA, Michael Schwartz and the probation officer.

60.     The contract is specifically designed to have ARCA, its employees, staff and agents act as an arm and agent of the State.  If ARCA does not make violation reports, neither the probation officer nor any of the sentencing courts in St. Louis City, St. Louis County or Lincoln County will have knowledge of violations of those court orders, avoiding revocation of Michael's probation.

## *THE ARCA PATIENT FILE AND THE MANDATORY VIOLATIONS NOT REPORTED*

61.     Under the contract, ARCA staff and employees were required to report to Michael's probation officer, within forty-eight (48) hours, any of the following:

"4.     Inform referring officer *within two business days* of:
- Missed appointments
- Positive tests for alcohol, illicit, or non-prescribed drugs
- Failure to comply with treatment or recovery plan
- Obstacles to treatment/recovery (transportation, money for medication, unsafe home environment, employment issues)."

62.     The ARCA patient file contains the following mandatory violations not reported by ARCA employees, and the fabricated documents of Sheryl Castro:

a.     On July 21, 2014, Sheryl Castro took the intake notes of Michael registering at ARCA.  Michael reported he had been using heroin (at that time) for two (2) weeks.  This was not reported to Probation and Parole.

b.     On July 22, 2014, Gail Fenton, lab technician, filed a report stating Michael had tested positive for opiates and oxy.  This was not reported to Probation and Parole.

c.     On July 31, 2014, Dr. Paul Selvadurai recorded that Michael was using heroin.  This was not reported to Probation and Parole.

d.     On July 31, 2014, Elise Jones, lab technician, filed a report stating Michael had tested positive for opiates and oxy.  This was not reported to Probation and Parole.

e.      On July 31, 2014, Dr. Selvadurai ordered Michael to attend a two (2) month out-patient med mgmt program.  On October 6, 2014, Katherine Kruse, ARCA's psychotherapist, documented that "client was enrolled in a two (2) month med mgmt program; never attended counseling; did not respond to contact attempts".  Ms. Kruse recommended discharge of Michael from ARCA.  This was not reported to Probation and Parole.  On October 10, 2014, Sheryl Castro typed and signed a letter from ARCA for Michael's probation officer saying that Michael had successfully completed the two (2) month program.

f.      On August 6, 2014, Katherine Kruse recorded that Michael did not appear for his appointment, and on August 12, 2014, she recorded that she spoke to Michael and he stated that he was not clean from heroin to get a Vivitrol shot.  These were not reported to Probation and Parole.

g.      On August 16, 2014, Judealyne Menzies recorded that Michael came in to get his Vivitrol shot, but that he could not because he tested positive for heroin.  This was not reported to Probation and Parole.

h.      On August 19, 2014, Elise Jones, lab technician, recorded that Michael tested positive for heroin on that date.  This was not reported to Probation and Parole.

i.      On Saturday, August 23, 2014, Michael and his mother, Brenda Fischer, went to ARCA for Michael to get his Vivitrol shot.  Sheryl Castro arrived saying that it was her day off, and that she had come in to give Michael his first Vivitrol shot.  Sheryl Castro recorded that she gave Michael the Vivitrol shot on that date.  However, Michael did **not** get this shot.  It would have been impossible for Michael to have gotten this shot because he tested positive for heroin on August 19, 2014, and admitted to using heroin again on August 24, 2014.  Vivitrol, by its protocol, cannot be administered in less than seven (7) days from the last usage of heroin or serious health

risks will occur.  On August 27, 2014, Sheryl Castro recorded that she gave Michael his first Vivitrol shot on that date, which is also impossible.  Michael had no vehicle to drive to ARCA on that date.[3]

        j.     On August 25, 2014, Sheryl Castro recorded that Michael had used heroin on August 24, 2014.  This was not reported to Probation and Parole.

        k.     On August 25, 2014, Dr. Shannon Jennings recorded that Michael had used heroin on August 24, 2014.  This was not reported to Probation and Parole.

        l.     Sheryl Castro recorded seven (7) times that she personally administered Vivitrol shots to Michael, out of the total eight (8) shots that the ARCA records reflect he would/should have received.  Since Sheryl Castro falsified the first shot, it is doubtful that Michael received any shots from Sheryl Castro.  Sheryl Castro is not legally permitted, qualified or certified to administer Vivitrol shots.  It must be a physician or a qualified, licensed and registered nurse pursuant to RSMo. § 335.016.  The shots recorded by Sheryl Castro are as follows:

| | | |
|---|---|---|
| 1. | Shot #1 (FIRST) | August 23, 2014 |
| 2. | Shot #1 (SECOND) | August 27, 2014 |
| 3. | Shot #2 | September 17, 2014 |
| 4. | Shot #3 | October 10, 2014 |
| 5. | Shot #4 | November 5, 2014 |
| 6. | Shot #5 | November 26, 2014 |
| 7. | Shot #6 | December 17, 2014 |
| 8. | Shot #7 | January 31, 2015* |
| | | *Administered by Judealyne Menzies |
| 9. | Shot #8 | March 2, 2015. |

---

[3] Following this first faked Vivitrol shot on August 23, 2014, text message exchanges began between Michael and Sheryl Castro on Sunday, August 24, 2014, and at a feverish pace.  On Sunday alone, the exchanges started at 2:45 p.m. and did not end until 2:57 a.m. on Monday, August 26, 2014).  The oddity of the volume and hours of exchanges between them continued until March 27, 2015, when Michael died.

m.      On October 14, 2014, Chris Rachocki recorded that Michael had chosen to be admitted to a two (2) month detox program.  This never happened.

n.      On January 26, 2015, a urinalysis result showed that Michael tested positive for morphine.  This was not reported to Probation and Parole.

o.      On March 2, 2015, Michael admitted to using heroin to ARCA employee, Sarah Bayliss.  This was not reported to Probation and Parole.

p.      On March 4, 2015, March 10, 2015 and March 18, 2015, Sheryl Castro wrote letters on ARCA letterhead to be given to Michael's probation officer stating that Michael had attended group sessions at ARCA.  Yet, according to Sheryl Castro's text messages in these letters are false.

63.      On March 26, 2015, Michael did not appear for his Vivitrol shot.  Michael died the next day.

## THE CAUSE OF MICHAEL'S DEATH

64.      Michael had twice attended long term substance abuse treatments (once for four (4) months, and once for one (1) year), through the Missouri Department of Corrections, trying to address his addiction.  The courts had no other remedies left, other than executing his sentences for long term incarceration and complete abstinence.

65.      ARCA, its staff and employees, agreed by contract to report Michael's addiction related violations to the Missouri Department of Probation and Parole.  ARCA also agreed by contract with the Missouri Department of Mental Health to implement policies and practices related to competent staff, emergency measures, family involvement, and supervision and control over the staff.  They did none of this for Michael.

66.     Instead, ARCA, its staff and employees, recklessly, negligently and indifferently to the safety of Michael allowed his addiction to end his life by ignoring their contractual duties, refusing to implement training and supervision of its staff, and finally, allowing a single employee to manipulate Michael and his addiction for her own sexual purposes.

67.     Finally, despite implementing the "MOM Power" of text messaging with Michael's mother, that process was allowed to be manipulated by Sheryl Castro also.  Brenda Fischer had been lulled into a false sense of security through Michael's ARCA treatment program.  Had she been informed of Michael's ongoing failures the way MOM Power was designed, and had the emergency measures required by the regulations been followed, drastic and immediate intervention could have occurred by Michael's parents and siblings.

**COUNT I**
**Violation of the Fourteenth Amendment of the United States Constitution**
**and 42 U.S.C. §§ 1983 and 1988 – Substantive Due Process/Deliberate Indifference**
**(Both Plaintiffs and All Defendants)**

68.     Plaintiffs hereby incorporate by reference paragraphs 1 – 67, as though fully set forth herein.

69.     By virtue of the contracts between ARCA and the Missouri Department of Mental Health, as well as between ARCA, the Board of Probation and Parole, and Michael, the Defendants agreed to act as arms and agents of the State of Missouri, thereby imposing duties and liabilities under the United States Constitution and 42 U.S.C. § 1983.  *The Estate of Bass v. Wallenstein, et al.*, 769 F.2d 1173 (7th Cir. 1985).

70.     The Defendants purposely ignored the duties imposed upon them as more fully set forth above, but namely, failing to implement processes and procedures for the safety and well being of Michael Schwartz.

22

71.     The acts and omissions described herein were committed with deliberate indifference to Michael's constitutional rights and in violation of the Fourteenth Amendment of the United States Constitution

72.     As a direct and proximate result of Michael's death, Michael's parents and surviving sisters have suffered extreme emotional distress, loss of society, consortium, comfort, love and affection of Michael's companionship.  Further, as a direct and proximate result of each of the Defendants' recklessness and deliberate indifference to Michael's safety and well being, Michael died, thereby entitling Plaintiffs to punitive damages.

73.     Plaintiffs are further entitled to the recovery of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs pray for judgment against Defendants for compensatory damages exceeding $10,000,000.00, punitive damages, attorney's fees, costs of this action, and for such other and further relief as this Court deems just and proper in the premises.

**COUNT II**
**Violation of the Fourteenth Amendment of the United States Constitution**
**and 42 U.S.C. §§  1983 and 1988 – Failure to Train and Supervise**
**(Both Plaintiffs and All Defendants)**

74.     Plaintiffs hereby incorporate by reference paragraphs 1 – 67, as though fully set forth herein.

75      By virtue of the contracts between ARCA and the Missouri Department of Mental Health, as well as between ARCA, the Board of Probation and Parole, and Michael, the Defendants agreed to act as arms and agents of the State of Missouri, thereby imposing duties and liabilities under the United States Constitution and 42 U.S.C. § 1983. *The Estate of Bass v. Wallenstein, et al.*, 769 F.2d 1173 (7th Cir. 1985).

23

76.     The Defendants purposely ignored the duties imposed upon them as more fully set forth above, but namely, recklessly failing to train and supervise its employees, staff and agents to protect the safety and well being of Michael Schwartz.

77.     The acts and omissions described herein were committed with deliberate indifference to Michael's constitutional rights and in violation of the Fourteenth Amendment of the United States Constitution

78.     As a direct and proximate result of Michael's death, Michael's parents and surviving sisters have suffered extreme emotional distress, loss of society, consortium, comfort, love and affection of Michael's companionship.  Further, as a direct and proximate result of each of the Defendants' recklessness and deliberate indifference to Michael's safety and well being, Michael died, thereby entitling Plaintiffs to punitive damages.

79.     Plaintiffs are further entitled to the recovery of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiffs pray for judgment against Defendants for compensatory damages exceeding $10,000,000.00, punitive damages, attorney's fees, costs of this action, and for such other and further relief as this Court deems just and proper in the premises.

**COUNT III**
**Wrongful Death**
**(Plaintiff Brenda Fischer Only and All Defendants)**

80.     Plaintiffs hereby incorporate by reference paragraphs 1 – 67, as though fully set forth herein.

81.     Defendants owed a duty to Michael Schwartz to use the highest degree of care in providing contracted services to Michael Schwartz.

24

82.     Defendants knew or should have known that the failure to exercise the highest degree of care in providing services to Michael Schwartz would cause serious risk of loss of life to Michael.

83.     Defendants did breach their duty to Michael Schwartz by negligently and recklessly committing one or more of the following acts or omissions:

     a.      failing to train and supervise all staff of ARCA regarding the mandatory reporting requirements for violations of probation and parole;

     b.      failing to review ARCA's own patient file of Michael Schwartz, and reporting violations to the Board of Probation and Parole;

     c.      failing to supervise Sheryl Castro; and

     d.      failing to implement its own "MOM Power" policy by informing Brenda Fischer of Michael's ongoing addiction problems.

84.     As a direct and proximate result of Michael's death, Michael's parents and surviving sisters have suffered extreme emotional distress, loss of society, consortium, comfort, love and affection of Michael's companionship.  Further, as a direct and proximate result of each of the Defendants' recklessness and deliberate indifference to Michael's safety and well being, Michael died, thereby entitling Plaintiffs to punitive damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants for compensatory damages exceeding $10,000,000.00, punitive damages, costs of this action, and for such other and further relief as this Court deems just and proper in the premises.

Respectfully submitted,
THE BAGSBY LAW FIRM


/s/   Larry A. Bagsby
Larry A. Bagsby, #37296
125 North Main Street, Suite 204
St. Charles, MO  63301
(636) 244-5595 telephone
(636) 244-5596 facsimile
larrybagsby@aol.com
*Attorney for Plaintiffs*