UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| **THE ESTATE OF MICHAEL SCHWARTZ**, and **BRENDA FISCHER** | ) ) ) ) | |
| Plaintiffs, | ) ) | Cause No.:   4:16-CV-00673 JMB |
| vs. | ) ) | |
| **ASSISTED RECOVERY CENTERS OF AMERICA, LLC, et al.** | ) ) ) | |
| Defendants. | ) ) | |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO (DOCUMENTS 26 and 27) THE CONSOLIDATED MOTION TO DISMISS COUNT III OF PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM

COME NOW, Plaintiffs, by and through counsel, and for their Memorandum in Opposition to (Documents 26 and 27) the Consolidated Motion to Dismiss Count III of Plaintiffs' Complaint for Failure to State a Claim, state as follows:

**I.     INTRODUCTION**

The consolidated Defendants of ARCA and its employees have filed a Motion to Dismiss under Rule 12(b)(6) for failure to state a claim against Count III only of the Complaint. Count III is filed under Chapter 538.010 et seq., generally known as the wrongful death statute of the State of Missouri. Defendants contend that the factual allegations of the pleading are a medical malpractice, which should have been pled under Chapter 537.010 et seq. The gist of Defendants' argument is that the Defendants, by virtue of being in a medical field or profession, are *ipso facto* only capable of being sued under Chapter 537. Defendants' contention is wrong.

The Complaint is painstakingly drafted to illustrate that these collective Defendants have entered into contracts with the Missouri Department of Corrections ("DOC" – synonymously referred to as the Department of Probation and Parole) and the Missouri Department of Mental

Health ("DMH") requiring them "to act as an arm and agent of the State". In a nutshell, the Defendants were required to report probation violations, e.g. missed appointments, positive tests for illegal drugs, and failed classes, to the Department of Probation and Parole – Decedent's probation officer. This has nothing to do with the practice of medicine or the negligent rendering of medical care. Multiple cases under Missouri law hold this to be true, and the same is true here.

## II.    FACTUAL ALLEGATIONS RELEVANT TO COUNT III

Paragraph 83 of the Complaint provides four (4) disjunctive alternatives of liability for the wrongful death of Decedent Michael Schwartz in Count III. Paragraph 83 states as follows:

> "83.   Defendants did breach their duty to Michael Schwartz by negligently and recklessly committing one or more of the following acts or omissions:
>
> a.   failing to train and supervise all staff of ARCA regarding the mandatory reporting requirements for violations of probation and parole;
>
> b.   failing to review ARCA's own patient file of Michael Schwartz, and reporting violations to the Board of Probation and Parole;
>
> c.   failing to supervise Sheryl Castro; and
>
> d.   failing to implement its own "MOM Power" policy by informing Brenda Fischer of Michael's ongoing addiction problems."

The specific facts supporting these alternatives are contained in Paragraphs 61, 62, and 62(a)-(p) of the Complaint. For the Court's ease, these are reset forth here:

> **"THE ARCA PATIENT FILE AND THE MANDATORY VIOLATIONS NOT REPORTED**
>
> 61.   Under the contract, ARCA staff and employees were required to report to Michael's probation officer, within forty-eight (48) hours, any of the following:
>
> "4.   Inform referring officer *within two business days* of:

2

- Missed appointments
- Positive tests for alcohol, illicit, or non-prescribed drugs
- Failure to comply with treatment or recovery plan
- Obstacles to treatment/recovery (transportation, money for medication, unsafe home environment, employment issues)."

  62. The ARCA patient file contains the following mandatory violations not reported by ARCA employees, and the fabricated documents of Sheryl Castro:

  a. On July 21, 2014, Sheryl Castro took the intake notes of Michael registering at ARCA. Michael reported he had been using heroin (at that time) for two (2) weeks. This was not reported to Probation and Parole.

  b. On July 22, 2014, Gail Fenton, lab technician, filed a report stating Michael had tested positive for opiates and oxy. This was not reported to Probation and Parole.

  c. On July 31, 2014, Dr. Paul Selvadurai recorded that Michael was using heroin. This was not reported to Probation and Parole.

  d. On July 31, 2014, Elise Jones, lab technician, filed a report stating Michael had tested positive for opiates and oxy. This was not reported to Probation and Parole.

  e. On July 31, 2014, Dr. Selvadurai ordered Michael to attend a two (2) month out-patient med mgmt program. On October 6, 2014, Katherine Kruse, ARCA's psychotherapist, documented that "client was enrolled in a two (2) month med mgmt program; never attended counseling; did not respond to contact attempts". Ms. Kruse recommended discharge of Michael from ARCA. This was not reported to Probation and Parole. On October 10, 2014, Sheryl Castro typed and signed a letter from ARCA for Michael's probation officer saying that Michael had successfully completed the two (2) month program.

  f. On August 6, 2014, Katherine Kruse recorded that Michael did not appear for his appointment, and on August 12, 2014, she recorded that she spoke to Michael and he stated that he was not clean from heroin to get a Vivitrol shot. These were not reported to Probation and Parole.

  g. On August 16, 2014, Judealyne Menzies recorded that Michael came in to get his Vivitrol shot, but that he could not because he tested positive for heroin. This was not reported to Probation and Parole.

  h. On August 19, 2014, Elise Jones, lab technician, recorded that Michael tested positive for heroin on that date. This was not reported to Probation and Parole.

3

        i.      On Saturday, August 23, 2014, Michael and his mother, Brenda Fischer, went to ARCA for Michael to get his Vivitrol shot. Sheryl Castro arrived saying that it was her day off, and that she had come in to give Michael his first Vivitrol shot. Sheryl Castro recorded that she gave Michael the Vivitrol shot on that date. However, Michael did **not** get this shot. It would have been impossible for Michael to have gotten this shot because he tested positive for heroin on August 19, 2014, and admitted to using heroin again on August 24, 2014. Vivitrol, by its protocol, cannot be administered in less than seven (7) days from the last usage of heroin or serious health risks will occur. On August 27, 2014, Sheryl Castro recorded that she gave Michael his first Vivitrol shot on that date, which is also impossible. Michael had no vehicle to drive to ARCA on that date.[1]

        j.      On August 25, 2014, Sheryl Castro recorded that Michael had used heroin on August 24, 2014. This was not reported to Probation and Parole.

        k.      On August 25, 2014, Dr. Shannon Jennings recorded that Michael had used heroin on August 24, 2014. This was not reported to Probation and Parole.

        l.      Sheryl Castro recorded seven (7) times that she personally administered Vivitrol shots to Michael, out of the total eight (8) shots that the ARCA records reflect he would/should have received. Since Sheryl Castro falsified the first shot, it is doubtful that Michael received any shots from Sheryl Castro. Sheryl Castro is not legally permitted, qualified or certified to administer Vivitrol shots. It must be a physician or a qualified, licensed and registered nurse pursuant to RSMo. § 335.016. The shots recorded by Sheryl Castro are as follows:

1. Shot #1 (FIRST)     August 23, 2014
2. Shot #1 (SECOND)     August 27, 2014
3. Shot #2     September 17, 2014
4. Shot #3     October 10, 2014
5. Shot #4     November 5, 2014
6. Shot #5     November 26, 2014
7. Shot #6     December 17, 2014

8. Shot #7     January 31, 2015*
        *Administered by Judealyne Menzies

9. Shot #8     March 2, 2015.

        m.      On October 14, 2014, Chris Rachocki recorded that Michael had chosen to be admitted to a two (2) month detox program. This never happened.

---

[1] Following this first faked Vivitrol shot on August 23, 2014, text message exchanges began between Michael and Sheryl Castro on Sunday, August 24, 2014, and at a feverish pace. On Sunday alone, the exchanges started at 2:45 p.m. and did not end until 2:57 a.m. on Monday, August 26, 2014). The oddity of the volume and hours of exchanges between them continued until March 27, 2015, when Michael died.

n.      On January 26, 2015, a urinalysis result showed that Michael tested positive for morphine.  This was not reported to Probation and Parole.

o.      On March 2, 2015, Michael admitted to using heroin to ARCA employee, Sarah Bayliss.  This was not reported to Probation and Parole.

p.      On March 4, 2015, March 10, 2015 and March 18, 2015, Sheryl Castro wrote letters on ARCA letterhead to be given to Michael's probation officer stating that Michael had attended group sessions at ARCA.  Yet, according to Sheryl Castro's text messages in these letters are false."

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a claim for relief must contain a short and plain statement that demonstrates grounds for the court's jurisdiction, showing that the pleader is entitled to relief, and a demand for the relief sought.  The pleading standard does not require detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Although the court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.  "[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but has not shown that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678.  "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility." *Braden v. Wal-Mart Stores*, 588 F.3d 585, 594 (8th Cir.

2009). "It is not, however, more than a probability requirement." *Iqbal*, 556 U.S. at 678. "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

"In addition, some factual allegations may be so indeterminate that they require further factual enhancement in order to state a claim." *Braden*, 588 F.3d at 594. The complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation in isolation, is plausible." *Id*. "Ultimately, evaluation of a complaint upon a motion to dismiss is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV.   ARGUMENT

Missouri courts have seen the argument made by defendants before. There is no such thing as a medical field shield. Merely because a defendant is engaged in a profession of medical services does not prohibit negligent, or even intentional, tort litigation against them outside of Chapter 537.

Missouri courts look to the gravamen of the factual allegations being brought. *Hilyard v. Medtronic, Inc.*, WL 1846106, (E.D.Mo. 2014). Logically, this Court and Missouri courts have repeatedly found conduct like failing to report probation violations and/or contacting a mother to warn of dangers are not subject to Chapter 537. *Hilyard* (using medical devices in an off-label manner not subject to Chapter 537). *Spero v. Mason*, 372 S.W.3d. 72 (Mo.App.W.D. 2012). (failing to warn employee of the dangers of interacting with residents of a violent history not subject to Chapter 537). *Breeden v. Hueser*, 273 S.W.3d. 1 (Mo.App.W.D. 2008). (improper billing practices and misrepresentation of medical products sold not to be subject of Chapter 537). *Meekins v. St. John's Regional Health Center, Inc.,* 149 S.W.3d 525 (Mo.App.S.D. 2004). (reporting false positive drug testing to an employer not to be subject of Chapter 537).

The conduct alleged in this lawsuit in Count III is the failure to perform contractual duties of contacting Probation and Parole about violations, and/or contacting decedent's mother regarding failed and dangerous behavior. This case is therefore properly brought under Chapter 538, and these Defendants' Motion to Dismiss must be denied.

**V.    CONCLUSION**

For the foregoing reasons, Defendants' collective Motion to Dismiss Count III of the Plaintiffs' Complaint must be denied.

Respectfully submitted,
THE BAGSBY LAW FIRM                                          LAW OFFICE OF KARIE PENNNINGTON, LLC


/s/    Larry A. Bagsby                                       /s/    Karie M. Pennington
Larry A. Bagsby, #37296                                      Karie M. Pennington, #65692
125 North Main Street, Suite 204                             3115 South Grand Blvd., Suite 350D
St. Charles, MO  63301                                       St. Louis, MO  63118
(636) 244-5595 telephone                                     (314) 681-9000 telephone
(636) 244-5596 facsimile                                     Karie@lawyerup314.com
larrybagsby@aol.com
*Counsel for Plaintiffs*                                     *Co-Counsel for Plaintiffs*


**CERTIFICATE OF SERVICE**

A copy of the foregoing was electronically filed and served this 19th day of July, 2016, to:

Jonathan Ries
Mohsen P.K. Pasha
Sandberg Phoenix & von Gontard, PC
600 Washington Avenue – 15th Floor
St. Louis, MO 63101-1313
*Counsel for Defendants Assisted Recovery Centers of America, LLC, Percy Menzies, Judealyne Menzies, Suneal Menzies, Tim Dalaviras, PhD, Andrea Shaw and Katherine Kruse*

7

and

Mandy J. Kamykowski
Michael C. Schroeder
Kamykowski, Gavin & Smith, PC
287 N. Lindbergh Blvd.
St. Louis, MO  63141
*Counsel for Defendant Paul N. Selvadurai, MD*

                                                  /s/     Larry A. Bagsby