UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE ESTATE OF MICHAEL SCHWARTZ and BRENDA FISCHER, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )    No. 4:16 CV 673 JMB ) |
| ASSISTED RECOVERY CENTERS OF AMERICA, LLC, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter relates to the unfortunate drug-related death of Michael Schwartz.  All

matters are pending before the undersigned United States Magistrate Judge, with the consent of

the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiffs are the Estate of Michael Schwartz ("Schwartz or Decedent") and his mother,

Brenda Fischer.  Currently before the Court is a four-count First Amended Complaint.

Defendants are Assisted Recovery Centers of America, LLC ("ARCA"), Percy Menzies,

Judealyne Menzies, Suneal Menzies, Tim Dalavias, Andrea Shaw, Katherine Kruse, (collectively

"ARCA Defendants"), Dr. Paul Selvadurai ("Selvadurai"), Dr. Shannon Jennings ("Jennings"),

and Sheryl Castro ("Castro") (all Defendants collectively "Defendants").[1]

---

[1] In their First Amended Complaint, Plaintiffs identify ARCA as a duly registered Missouri corporation which operates multiple addiction treatment centers throughout St. Louis and surrounding areas.  (First Am. Compl. at ¶ 7)  Percy Menzies is the President of ARCA.  Judealyne Menzies is Percy Menzies's wife and nursing director for ARCA.  Ms. Menzies operates ARCA facilities, and is responsible for the daily supervision of the facilities.  (Id. at ¶ 9)  Suneal Menzies is the Menzies' son and the program director of the ARCA facilities.  Suneal Menzies also serves as corporate liaison officer of ARCA to the Missouri Department of Mental Health.  (Id. at ¶ 10)  Tim Dalaviras is the CEO of ARCA, and is responsible for the daily operation of the ARCA facilities.  (Id. at ¶ 11)  Andrea Shaw is the clinical director of ARCA and is responsible for program development and clinical oversight of ARCA's outpatient

The First Amended Complaint includes four claims—two federal claims and two supplemental Missouri tort claims.  The focus of the present Memorandum and Order is Counts I and II, which assert federal claims against all Defendants under 42 U.S.C. §§ 1983 and 1988.  Broadly speaking, Counts I and II allege violations of Schwartz's substantive due process rights under the Fourteenth Amendment to the Constitution, including deliberate indifference, and failure to train and/or supervise.  In Count III, Plaintiffs assert a wrongful death claim under RSMo § 537.080 against all Defendants except Drs. Selvadurai and Jennings.  Count III alleges that Defendants owed Schwartz a duty to use the highest degree of care and seeks compensatory damages exceeding $10 million.  In Count IV, Plaintiffs assert a medical malpractice claim under RSMo § 538.205 against Drs. Selvadurai and Jennings.  (ECF No. 63, First Am. Compl.)

Currently pending before the Court are the following six motions:

1.  ARCA Defendants' Motion to Dismiss Counts I, II, and III of Plaintiffs' First Amended Complaint for Failure to State a Claim (ECF No. 73);

2.  Dr. Selvadurai's Motion to Dismiss All Counts of Plaintiffs' Amended Complaint for Failure to State a Claim (ECF No. 75);

3.  Dr. Selvadurai's Motion to Dismiss Count IV of Plaintiffs' First Amended Complaint for Failure to File a Healthcare Affidavit in Compliance with Mo. Rev. Stat. § 538.225 (ECF No. 77);

4.  Castro's Motion to Dismiss Counts I, II, and III of Plaintiffs' First Amended Complaint for Failure to State a Claim (ECF No. 88);

5.  Dr. Jennings' Motion to Dismiss Counts I, II, and IV of Plaintiffs' Amended Complaint for Insufficient Service of Process under Rule 12(b)(5) and Failure to State a Claim under Rule 12(b)(6) (ECF No. 91); and

---

services.  (Id. at ¶ 12)  Drs. Paul Selvadurai and Shannon Jennings are staff physicians at ARCA, and provide medical services and outpatient substance abuse treatment for ARCA clients.  (Id. at ¶¶ 13-14)  Katherine Kruse is a psycho-therapist for the ARCA outpatient psychotherapy services.  (Id. at ¶15)  Sheryl Castro is a registered medical assistant who was employed by ARCA.  (Id. at ¶ 16)

6.      Dr. Selvadurai's Motion to Strike All Exhibits Attached to Plaintiffs' Consolidated Memorandum of Law in Opposition to All Defendants' Motion to Dismiss and/or Summary Judgment (ECF No. 102).

## I.     Relevant Factual Background

ARCA operates multiple addiction-recovery clinics and offers two programs relevant to this matter, the Comprehensive Substance Treatment and Rehabilitation program ("CSTAR") and the Medication Assisted Treatment program ("MAT").  (Id. at ¶¶ 7, 25-26)  CSTAR and MAT are programs defined by the Missouri Department of Mental Health, Division of Alcohol and Drug Abuse.  (Id. at ¶ 26)  Plaintiffs allege that ARCA obtained state-mandated certifications to practice CSTAR and MAT, and that compliance with state regulations is required to maintain the certifications.  (Id. at ¶ 24-25)  Plaintiffs allege that ARCA is not only required to be certified by the State of Missouri, it must also contract with the Department of Mental Health to provide community-based services.  (Id. at ¶¶ 23, 30)

ARCA is one of the authorized, community-based addiction service providers for the Missouri Department of Corrections.  (Id. at ¶ 38)  According to Plaintiffs' First Amended Complaint, on July 21, 2014, Schwartz entered into a contract with ARCA as a mandatory condition of his Missouri probation and parole.  (Id. at ¶ 36; ECF No. 76-1, ARCA's Release of Information)  Schwartz's participation in ARCA's outpatient drug treatment program was pursuant to multiple court orders following a period of incarceration in the Missouri Department of Corrections for drug-related offenses.

Plaintiffs assert that Schwartz, ARCA, and the Department of Corrections, through Schwartz's supervising probation officer, completed a mandatory form ("Referral Form") that eliminated the physician/patient privilege and required ARCA to act as an agent and arm of the Department of Probation and Parole by providing prompt notice, within two business days, of

any violations related to Schwartz's treatment, including missed appointments, positive drug or alcohol tests, and any failure to comply with treatment.  (Id. at ¶¶ 39-42, 61-62; ECF No. 98-11, Missouri Department of Corrections and Department of Mental Health – Community Treatment and Recovery Services Referral Form/Community-Based Mental Health and Substance Abuse Treatment and Recovery Services – *Client Treatment and Recovery Services Guidelines*)[2]  Based on this contract, Plaintiffs contend that ARCA "agree[d] … to act as an agent and arm of the Department of Probation and Parole by providing notice to them of any violations or conditions of the offender related to his treatment."  (Id. at ¶ 40)  Plaintiffs allege that if ARCA failed to make probation violation reports, the probation officer and the sentencing courts would not have knowledge of the violations of the court orders, resulting in Schwartz's probation not being revoked.  (Id. at ¶ 61)

Plaintiffs further allege that ARCA's agents and employees were aware of their responsibilities to Schwartz's probation officer as evidenced by ARCA's own release.  That release required ARCA and its agents and employees to disclose specified, confidential medical, substance abuse/dependence, and/or information obtained in the treatment at ARCA to Schwartz's probation officer.  According to Plaintiffs, the information to be disclosed included lab results and a treatment plan.  (Id. at ¶ 65-67)

As noted above, Plaintiffs allege that Schwartz commenced outpatient treatment with ARCA in July 2014.  This was not, however, the first time Schwartz received treatment with ARCA.  In this regard, Plaintiffs allege that, after Schwartz was released on probation in 2011, he also registered with ARCA.  In Schwartz's prior stint with ARCA, his substance abuse

---

[2] In the First Amended Complaint, Plaintiffs assert that Schwartz, ARCA, and his supervising probation officer, executed the Referral Form as a condition of his probation.  (First Am. Compl. at ¶ 39-44)  Plaintiffs assert that after Schwartz's death, Paul Koessel, his last probation officer, destroyed the document.  (Id. at ¶ 44)

counselor was Ned Presnall.  (Id. 68-69)  On November 22, 2011, Presnall contacted Schwartz's Probation Officer, Jeffrey Martin (now deceased), and informed him that Schwartz had taken at least 45 lithium tablets, resulting in Schwartz's hospitalization.  On November 29, 2011, Presnall again contacted Martin, advising him that Schwartz had taken ten Xanax and had again been hospitalized.  (Id.)  Plaintiffs allege that Martin sought to have Schwartz's probation revoked. Martin justified the revocation, noting that Schwartz's ARCA counselor did not believe there was anything more that could be offered to Schwartz because he had exhausted all the community based resources available.  (Id. at ¶ 70)  According to Plaintiff, Martin decided the only recourse available was to revoke Schwartz's probation and execute his sentence.  (Id.)

Regarding Schwartz's treatment at issue in this case, which commenced in 2014, Plaintiffs allege that, although ARCA, its staff, and employees were contractually obligated to report various aspects of Schwartz's treatment to his probation officer and/or his mother, they failed to do so.  (Id. at ¶¶ 71-72)  According to Plaintiffs, Schwartz incurred numerous violations of his treatment with ARCA that Defendants allegedly failed to report to Schwartz's probation officer.  (See, e.g., id. at 62-64)  Schwartz eventually died of a heroin overdose.  Plaintiffs contend that the cause of Schwartz's death by heroin overdose was due to Defendants' failure to notify the Missouri Department of Probation and Parole of his addiction related violations and/or his mother of his ongoing failures so that an intervention could have occurred as had occurred in November 2011.  (Id. at ¶¶ 71-74)

## II.   **Legal Standard – Motion to Dismiss**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint.  To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim for relief "must include sufficient  factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (quoting Twombly, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  Id. at 555-56; Fed. R. Civ. P. Rule 8(a)(2).  The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions.  Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

"While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment."  Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 & n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1357 (3d ed., 2004)).  Where the extraneous documents are central to the plaintiff's case, such as a written contract in a contract dispute, the court may examine the documents in deciding a motion to dismiss.  See

-6-

<u>Stahl v. U.S. Dep't of Agriculture</u>, 327 F.32d 697, 700 (8th Cir. 2003).  This is even so, where the relevant contract documents are attached as exhibits to the motion to dismiss instead of the pleadings.  <u>Id.</u> at 661.

**III.    Discussion**

      **A.      Section 1983 Claims Generally**

According to the First Amended Complaint, ARCA is a private, addiction recovery treatment center certified by the State of Missouri, and requiring compliance with state regulations.  ARCA is an authorized provider for the Missouri Department of Corrections and contracts with the Missouri Department of Mental Health to provide community-based services. Schwartz started ARCA's outpatient drug treatment program on July 21, 2014, as a mandatory condition of his probation and parole pursuant to multiple court orders.  According to Plaintiffs, Schwartz, ARCA, and the Department of Corrections, through Schwartz's supervising probation officer, completed a mandatory Referral Form that eliminated the physician/patient privilege and required ARCA to act as an agent of the Department of Probation and Parole by providing two-day's notice of any violations of the offender related to his treatment.   Plaintiffs allege that Defendants failed to make mandatory violation reports, depriving Schwartz's probation officer and the sentencing courts of knowledge of the violations of the court orders.  Thus, according to Plaintiffs, Schwartz's probation was not revoked when it should have been.

Counts I and II, are brought under 42 U.S.C. § 1983.  Defendants contend that ARCA is a private drug addiction treatment center and that none of Defendants were clothed in the authority of state law with respect to the factual allegations in the First Amended Complaint.  Defendants argue that Plaintiffs cannot establish that they were state actors and that their actions were under color of state law.  Thus, Defendants contend that this Court must dismiss Plaintiffs' § 1983

claims.  Plaintiffs oppose the motions to dismiss and argue that state action may be properly found inasmuch as Defendants had been delegated a public function by the state—reporting probation violations.  Plaintiffs argue that Defendants executed contracts wherein they agreed to be state actors.

To state a claim under § 1983, a plaintiff must prove the "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right."  Kuha v. City of Minnetonka, 365 F.3d 590, 606 (8th Cir. 2003). "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor." Neighborhood Enters., Inc. v. City of St. Louis, 540 F.3d 882, 885 (8th Cir 2008) (quotations omitted).  But private conduct, no matter how egregious, discriminatory, or harmful, is beyond the reach of § 1983.  See Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982) ("[T]he under-color-of-state law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'") (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982); Americans United for Separation of Church & State v. Prison Fellowship Ministries, Inc., 509 F.3d 406, 421 (8th Cir. 2007) (citing American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)).

**B.      State Action / Color of Law Requirement**

An essential ingredient of a § 1983 claim, therefore, is that the defendant(s) acted under color of state law.  See Dossett v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005) ("Section 1983 imposes liability for certain actions taken 'under color of' law that deprive a person 'of a right secured by the Constitution and laws of the United States.") (quoting Lugar, 457 U.S. at

931; see also Carlson v. Roetzel & Andress, 552 F.3d 648, 650 (8th Cir. 2008) ("Only state

actors can be held liable under section 1983.") (quotation marks omitted).  Plaintiffs do not assert

§ 1983 claims against any state or local officials.  Rather, Counts I and II are directed at private

parties.  The Court must decide, therefore, whether Counts I and II can satisfy the color of law

requirement.[3]  As will be explained below, on the allegations of Plaintiffs' First Amended

Complaint, the Court finds that Plaintiffs have not satisfied the state action requirement for

bringing a § 1983 action.  Therefore, Counts I and II must be dismissed.  Further, absent a viable

federal cause of action, the undersigned will decline to retain supplemental jurisdiction of Counts

III and IV.

"The traditional definition of acting under color of state law requires that the defendant in

a § 1983 action have exercised power possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law."  West v. Atkins, 487 U.S. 42,

49 (1988) (internal citation and quotation marks omitted).  Under certain circumstances, a private

party may be held liable pursuant to § 1983.

> The Supreme Court has recognized a number of circumstances in which a private
> party may be characterized as a state actor, such as where the state has delegated
> to a private party a power traditionally exclusively reserved to the State, where a
> private actor is willful participant in joint activity with the State or its agents, and
> where there is pervasive entwinement between the private entity and the state....
> The one unyielding requirement is that there be a "close nexus" not merely
> between the state and the private party, but between the state and the alleged
> deprivation itself.  No such nexus exists where a private party acts with the mere
> approval or acquiescence of the state, but a private entity may be considered a
> state actor if it acted together with or has obtained significant aid from state
> officials in furtherance of the challenged action.

---

[3] "If a defendant's conduct satisfies the state-action requirement of the Fourteenth
Amendment, the conduct also constitutes action 'under color of state law' for § 1983 purposes."
Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 n.2 (2001) (quoting
Lugar, 457 U.S. at 935 (1982).

Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir. 2007) (internal quotations omitted).  "Thus, … state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  Brentwood Acad. 511 U.S. at 295 (internal quotation marks omitted).

To be a state actor, it is not enough that an actor have a contract with the state; there is state action when a private actor had a contract with the state and additional factors strengthened the nexus between the state and the challenged action.  See Rendell, 457 U.S. at 840-42  (holding that a private school was not a state actor despite its operation under a contract with the state and receipt of state funds); West, 487 U.S. at 54 (holding that physician under contract with the state to provide medical services to inmates in a state prison acted under color of law within the meaning of section 1983); Smith v. Insley's Inc., 499 F.3d 875, 880-81 (8th Cir. 2007) (holding that a towing company acted under color of state law when it had a contract with the state and towed a vehicle at the request of the sheriff's office as part of an official criminal investigation).

As one might reasonably glean from the Supreme Court's cases, application of the color of law action requirement often presents one of the more difficult and troublesome issues in § 1983 litigation, and is not easily satisfied.  See Holloway v. Ameristar Casino St. Charles, Inc., 2010 WL 148441 at *10 (E.D. Mo. Jan. 12, 2010).

"Although there are many tests to determine whether a private corporation [or person] acts under color of state law, the ultimate issue is whether the private corporation's actions are fairly attributable to the state."  Estate of Beelek v. Farmington Missouri Hosp. Co., LLC, 2011 WL 4008018 *3 (E.D. Mo. Sept. 8, 2011) (internal quotations omitted) (citing Rendell–Baker, 457 U.S. at 838; see also Lugar, 457 U.S. at 937.  In Brentwood Academy, the Supreme Court cataloged some of the factors and tests used to attribute the activity of private persons to the

-10-

state.  <u>See</u> 531 U.S. at 295–96.  Although the undersigned has considered Plaintiffs' § 1983 claims under all of these standards, as the Court in <u>Brentwood Academy</u> aptly noted, given the variety of tests and standards, "examples may be the best teachers."  <u>Id.</u> at 296.

The undersigned has not identified any cases from the Supreme Court or the Eighth Circuit that address factual circumstances substantially similar to the circumstances alleged in Counts I and II of Plaintiffs' First Amended Complaint.

On the one hand, it is now well-established that private medical providers can act under color of law when providing services that a state is required to provide to confined persons.  A state has an obligation to provide basic medical care to those it incarcerates, "because the prisoner is unable by reason of the deprivation of his liberty [to] care for himself, it is only just that the State be required to care for him."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976) (citations and internal quotations omitted); <u>see also</u> <u>Youngberg v. Romeo</u>, 457 U.S. 307 (1982) (involuntarily committed mental patients); <u>DeShaney v. Winnebago County Dept. of Soc. Servs.</u>, 489 U.S. 189, 199-200 (1989) (explaining that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being") (citing <u>Youngberg</u>).  Upon these principles, the courts have concluded that private doctors who provide medical services to confined person, even on a part-time basis pursuant to a contract with the state, act under color of law for § 1983 purposes.  <u>See</u> <u>West</u>, 487 U.S. at 54 (medical care); <u>Harris v. Corizon, LLC</u>, 2014 WL 5564248 *1-2 (E.D. Mo. Oct. 31, 2014) (dental care).

On the other hand, the cases are not so favorable to Plaintiffs when they involve services for non-incarcerated persons.  And Schwartz has not identified, nor has the undersigned located, any cases indicating that a state must provide medical, psychological, or out-patient drug

treatment services to persons on probation or parole.  In fact, the cases suggest an opposite conclusion.

In <u>Blum v. Yaretsky</u>, 457 U.S. 991 (1982), the Court held that Medicaid recipients had not established that certain nursing home decisions to discharge or transfer patients amounted to state action.  First, the Court explained that the mere fact that the nursing homes were heavily regulated by the state did not transform them into state actors.  <u>See id.</u> at 1004.  Rather, a § 1983 plaintiff "must also show that 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may fairly be treated as that of the State itself.'"  <u>Id.</u> (quoting <u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345, 351 (1974)).  Second, the Court explained that "although the factual setting of each case will be significant, our precedents indicate that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either over or covert, that the choice must in law be deemed that of the State." <u>Id.</u> (citing cases).  Third, the Court noted that, "the required nexus may be present if the private entity has exercised powers that are 'traditionally the exclusive prerogative of the State.'"  <u>Id.</u> at 1005 (quoting <u>Jackson</u>, 419 U.S. at 353).

In <u>Rendell-Baker v. Kohn</u>, 457 830 (1982), relying on its contemporaneous decision in <u>Blum</u>, the Court held that a private school with special programs for students with substance abuse and other problems was not a state actor for § 1983 purposes.  <u>See id.</u> at 832, 843.  This was true even though the school worked with a state department of mental health, was subject to significant state and local regulations, and most of its budget came from state funds.  <u>Id.</u> at 832.

In contrast to the lack of cases supporting Plaintiffs' position, several cases, including cases cited by Defendants, support a conclusion that private businesses which provide services to

-12-

former inmates (e.g., persons on parole or supervision) are not state actors because such functions/services are not traditionally the exclusive prerogative of the State, and such businesses lack the authority to return the person to prison.

The most apt case, perhaps, is a reported decision from this District.  In <u>Graves v. Narcotics Serv. Counsel, Inc.</u>, 605 F.Supp. 1285 (E.D. Mo. 1985), this Court addressed the question of whether the actions of the employees of a nonprofit halfway house were taken under color of law pursuant to § 1983.  The plaintiff in <u>Graves</u> alleged that the defendants failed to properly treat his drug addiction and prematurely released him from a detoxification program that he had been ordered to attend as a condition of probation.  Like ARCA, the halfway house was subject to a number of state regulations and certified by the Department of Mental Health.  Relying on <u>Rendell-Baker</u> and <u>Blum</u> (both discussed above), our Court held that the plaintiff had not shown that the defendants acted under color of state law.  <u>See id.</u> at 1287.

In <u>Smith v. Devline</u>, 239 Fed. Appx. 735, 2007 WL 1989689 (3d Cir. July 11, 2007), the Third Circuit considered a § 1983 action filed by a person who was paroled from a state prison to a private residential treatment center.  <u>Id.</u> at 735-36.  Based on the facts of that case, the court held that the plaintiff failed to show the center acted under color of state law.  The court reasoned, <u>inter alia</u>, that "[w]hen a resident commits a program violation, [the treatment center] does not have the authority to return the resident to prison.  [Instead, the treatment center] is required to notify the proper governmental authority, who then determines whether the resident should be returned to prison or remain in the program."  <u>Id.</u> at 736.

Similarly, in <u>Byng v. Delta Recovery Servs, LLC</u>, 2013 WL 3897485 at *1 (N.D.N.Y. July 29, 2013), a parolee filed suit against a residential substance abuse treatment facility, alleging, among other things, a civil rights claim under § 1983.  The court held that the facility

-13-

was not a state actor for § 1983 purposes.  Id. at *9, 15.  The court explained that the case was different from situations involving privately run prisons.  Id. at *6 (citations omitted).  Rather, the court noted that the defendant facility lacked the authority to return a parolee to prison; instead, "they notify that individual's parole officer or other governmental entity, who then, at the officer or entity's discretion, files a petition seeking revocation of parole."  Id. at 8 (citing Smith v. Devline, supra).  The court analogized private drug treatment facilities to private transitional housing facilities, citing cases finding that "the provision of transitional housing to former inmates under parole supervision is not a function that has traditionally been the exclusive prerogative of the state."  Id. at *9 (citations omitted).[4]

In the present case Schwartz received out-patient drug treatment services from ARCA; he was no longer incarcerated at the time in question.  Moreover, ARCA was not providing essential medical services to Schwartz in the same way that a physician or dentist provides such services to a prisoner.

Applying the foregoing precedent to Plaintiffs' First Amended Complaint, the undersigned concludes that Counts I and II fail to state a claim because, as a matter of law, they fail to allege that Defendants acted under color of state law.  First, Schwartz was not incarcerated

---

[4] In Young v. Halle Hous. Assoc., L.P., 152 F. Supp.2d 355, 365 (S.D.N.Y. 2001), a district court explained that, "[a]lthough the State of New York has a constitutional interest in providing housing for the needy, the provision of housing, for the poor or anyone else, has never been the exclusive preserve for the state, but has been left to a regulated, and occasionally subsidized, private marketplace."  See also Moore v. Broady, 2010 WL 3125008 (S.D.N.Y. Aug. 6, 2010) (no state action by transitional housing facility for parolees).  But see Lemoine v. New Horizons Ranch and Center, Inc., 990 F. Supp. 498 (N.D. Texas 1998).  In Lemoine, a district court held that a private juvenile residential treatment center, and one of its contract physicians, were state actors for § 1983 purposes.  Id. at 502-03.  A key factor in Lemoine is that court equated the juvenile treatment center to a private prison, and the contract physician to a prison doctor.  See id.  The instant case is distinguishable for several reasons, including that Schwartz was not incarcerated or detained by ARCA.

-14-

or involuntarily detained at the time in question.  Instead, Schwartz was an out-patient participant at ARCA.  Out-patient substance abuse treatment services are not the type of essential services that are exclusively provided by the State, and Plaintiffs do not suggest otherwise.[5]  Thus, Defendants cannot be held to the standard that applies to private prisons and those who provide services to confined persons.  Compare West, 487 U.S. at 54; and Estelle, 429 U.S. at 103-04; with Smith, 239 Fed. Appx. at 735-36.  In Smith, the plaintiff/parolee was receiving in-patient services, yet the Third Circuit found that the service provider was not acting under color of state law.  See id.  Here, ARCA provided out-patient services to Schwartz.

Second, the fact that ARCA contracted with the State of Missouri to provide services to parolees such as Schwartz, received state funding, and was subject to substantial regulations, does not render Defendants state actors.  In this regard, Schwartz's case is substantially indistinguishable from our Court's prior decision in Graves.  In Graves, Judge Nangle considered those same factors in a comparable situation and found them insufficient to show state action. See 605 F.Supp. at 1285.

Finally, even accepting for present purposes that ARCA had a contractual duty to disclose Schwartz's program violations to the State, such a contractual duty does not rise to the

---

[5] At oral argument, Plaintiffs argued that Schwartz's probation/parole status was an exclusive function of the State.  That much is certainly true.  Plaintiffs further argued that, reporting probation/parole violations to the supervising court is also a function of the State, and Schwartz was in ARCA's program only because ARCA allegedly agreed to report any violations to Schwartz's State Probation Officer.  Plaintiffs, however, offer no meaningful case support for their contention that a duty to report probation/parole violations is a unique function of the State. Moreover, the power to revoke or not revoke parole/probation is a discretionary state function, based on any number of means by which a violation may be reported or discovered. Indeed, there is considerable discretion in deciding which violations may result in revocation and whether a particular violation should result in a return to prison.  See Sincup v. Blackwell, 608 S.W.2d 389, 392-93 (Mo. 1980) (en banc); Abel v. Wyrick, 574 S.W.2d 411, 418 (Mo. 1978) (en banc); Schmeets v. Turner, 706 S.W.2d 504, 507 (Mo. Ct. App. 1986); Ex Parte Moore v. Stamps, 507 S.W.2d 939, 948-49 (Mo. Ct. App. 1974) (each discussing judicial discretion regarding revocation).

level of state action in this case.  As the Third Circuit explained in <u>Smith</u>, the duty to report a violation does not equate to the authority to return a program violator to prison.  <u>See</u> 239 Fed. Appx. at 736; <u>see also</u> <u>Byng</u>, 2013 WL 3897485 at *1.  Plaintiffs do not contend that ARCA or any defendant had the authority to return Schwartz to prison.   Rather, Plaintiffs contend that ARCA had a duty to report violations.  Such a duty does not convert Defendants' private conduct herein, however egregious, distasteful, or negligent any particular defendant's conduct may have been, into state action.  <u>See</u>, <u>e.g.</u>, <u>Rendell-Baker</u>, 457 U.S. at 838.  Therefore, Plaintiffs' Counts I and II fail to allege that Defendants acted under color of state law and Counts I and II must be dismissed.

**C.     Defendants' Other Arguments Regarding Counts I and II**

Defendants offer other arguments why Counts I and II must be dismissed.  Because the Court finds as a matter of law that Counts I and II fail alleged that Defendants acted under color of state law, the Court will not address the other arguments raised herein.

**D.     Counts III and IV – Supplemental Wrongful Death and Malpractice Claims**

In their First Amended Complaint, Plaintiffs also included a Wrongful Death claim (Count III) and a Medical Malpractice claim (Count IV) brought under Missouri law.  (ECF No. 63, ¶¶ 87-98)  Title 28, U.S.C. §1367(a) states that district courts have supplemental jurisdiction "over [state] claims that are so related to [federal] claims in the action ... that they form part of the same case or controversy[.]"  A district court, however, may decline to exercise supplemental jurisdiction over a state claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); <u>see also</u> <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350(1988) (stating that "a federal court should consider and weigh in each case ... the values of judicial economy, convenience, fairness, and comity" in deciding whether to exercise

supplemental jurisdiction); <u>Ivy v. Kimbrough</u>, 115 F.3d 550, 552-53 (8th Cir. 1997) (stating that "[i]n most cases, when federal and state claims are joined and the federal claims are dismissed on a motion for summary judgement, the pendent state claims are dismissed without prejudice to avoid needless decisions of state law ... as a matter of comity and to promote justice between the parties.").

Although the Court has supplemental jurisdiction over the state medical malpractice and wrongful death claims by virtue of their connection to Plaintiffs' federal claims, because the Court will grant Defendants' motions to dismiss on Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state claims. The principles of judicial economy, comity, justice between the parties, and most importantly, the avoidance of needless decisions of state law weigh against exercising supplemental jurisdiction over Plaintiffs' state claims in this particular case. Accordingly, the Court dismisses without prejudice Plaintiffs' supplemental wrongful death and medical malpractice claims.

**IV.**     **Conclusion**

**IT IS HEREBY ORDERED** that Movants' (ARCA Defendants) Motion to Dismiss Counts I, II, and III of Plaintiffs' Amended Complaint for Failure to State a Claim (ECF No. 73), Defendant Dr. Paul Selvadurai's Motion to Dismiss All Counts of Plaintiffs' Amended Complaint for Failure to State a Claim (ECF No. 75), Defendant Sheryl Castro's Motion to Dismiss Counts I, II, and III of Plaintiffs' Amended Complaint for Failure to State a Claim (ECF No. 88), and Dr. Shannon Jennings' Motion to Dismiss Counts I, II, and IV of Plaintiffs' Amended Complaint for Insufficient Service of Process under Rule 12(b)(5) and Failure to State a Claim under 12(b)(6) (ECF No. 91) are GRANTED with respect to Plaintiffs' federal claims.

**IT IS FURTHER ORDERED** that Plaintiffs' state-law wrongful death and medical malpractice claims (Counts III and IV) are DISMISSED WITHOUT PREJUDICE.

**IT IS FURTHER ORDERED** that Defendant Dr. Paul Selvadurai's Motions to Strike All Exhibits Attached to Plaintiffs' Consolidated Memorandum of Law in Opposition to All Defendants' Motions to Dismiss and/or Summary Judgment (ECF No. 77) and to Dismiss Count IV of Plaintiffs' First Amended Complaint for Failure to File a Health Care Affidavit in Compliance with Mo. Rev. Stat. § 538.225 and  to Strike All Exhibits Attached to Plaintiffs' Consolidated Memorandum of Law in Opposition to All Defendants' Motions to Dismiss and/or Summary Judgment (ECF No.102) ARE DENIED AS MOOT.

/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of March, 2017

-18-